UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUSAN MARIE BEGOSKE,

      Plaintiff,                   Civil Action No.  13-11988

           v.                District Judge TERRANCE G. BERG
                              Magistrate Judge R. STEVEN WHALEN

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Susan Marie Begoske brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act.  The parties have filed cross-motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).   For the reasons discussed below, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

On April 23, 2010 Plaintiff applied for DIB and SSI, alleging disability as of

-1-

September 1, 2008 (Tr. 143-146, 147-150).  After the initial denial of her claim, Plaintiff requested an administrative hearing, held on September 21, 2011 in Ocala, Florida (Tr. 32). Administrative Law Judge ("ALJ") Philemina M. Jones presided.  Plaintiff, represented by attorney Ronald Watson, testified by teleconference from Michigan. Vocational Expert ("VE") Walter Todorowski also testified (Tr. 37-63, 64-67).  On November 10, 2011, ALJ Jones found that Plaintiff was capable of performing her past work as a cashier (Tr. 26).  On March 4, 2013 the Appeals Council denied review (Tr. 1-5).  Plaintiff filed for judicial review of the final decision on May 3, 2013.

## BACKGROUND FACTS

Plaintiff, born September 2, 1963, was 48 at the time of the administrative decision (Tr. 26, 143).  She completed 12th grade and worked previously as a cashier, laborer, and machinist (Tr. 187).  She alleges disability due to a brain injury causing leg numbness, difficulty concentrating, and depression (Tr. 186).

### A.    Plaintiff's Testimony

Plaintiff offered the following testimony.

She was 5' 8" and weighed approximately 165 pounds (Tr. 38).  She did not hold a current driver's license since being convicted of an alcohol related traffic offense (Tr. 38). Due to a car accident her senior year of high school, she finished 12th grade but did not graduate from high school (Tr. 39).  She quit a cashiering position in 2010 due to her inability to stand for extended periods, left side numbness, and confusion (Tr. 41).  She

worked as a cashier at a gas station between January, 1993 and September, 2008 (Tr. 41).

Between July and September, 2007, she worked for a "temp" agency, working in both factory

and landscape positions (Tr. 42). Between July, 2005 and June, 2006, she drove a "high-

low" (Tr. 42). Plaintiff had not used alcohol since losing her driver's license (Tr. 43). She

was unable to work due to left side numbness after sitting or standing for long periods;

confusion and frustration; and breathing problems (Tr. 43-44). She was unable to afford

treatment for leg numbness (Tr. 46). She avoided cooking at home due to her inability to

stand for extended periods (Tr. 47). Her household chores were limited to putting dishes in

the dishwasher, but she was able to care for her personal needs (Tr. 48). She had not

required emergency room visits for her medical conditions or psychiatric inpatient treatment

since the alleged onset of disability date (Tr. 48). Plaintiff was currently living with friends

who went to her church (Tr. 47). On a typical day, she would drink tea, go outside, stretch,

read, and watch television (Tr. 48).

In response to questioning by her attorney, Plaintiff contradicted her early testimony

that she had held one job between 1993 and 2008, stating instead that she had not held one

job for more than seven months (Tr. 41, 50). The ALJ noted that her prior testimony that she

had not collected unemployment insurance (Tr. 43) was contradicted by the earning records

(Tr. 51). Plaintiff acknowledged that since the alleged onset date, she had applied for

various grocery store positions (Tr. 52). She attributed her conflicting job testimony to

confusion as a result of the head injury, combined with the large number of jobs that she had

held for short periods (Tr. 54).  She stated that her physical problems were concentrated in her left thigh and the left side of her back (Tr. 55).  She reported that thigh numbness, radiating into her lower leg and foot, occurred for two hours five to six times a week (Tr. 55). She indicated that leg numbness caused sleep disturbances (Tr. 56).  Plaintiff opined that her concentrational problems had gotten worse in recent years, noting that she had been discharged for mishandling job assignments (Tr. 57).  She alleged difficulty comprehending spoken directions (Tr. 58).  She estimated that she could stand or sit for up to 40 minutes and could walk up to three blocks (Tr. 58).  She stated that she was unable to lift more than seven pounds on an occasional basis due to back problems (Tr. 58).

Plaintiff opined that she would be unable to perform the job of gatekeeper due to her fear of doing "the wrong paperwork," "push[ing] the wrong gate," or her need to recline on a regular basis (Tr. 59).  She indicated that she coped with back pain by reclining periodically and the use of both over-the-counter and prescription pain killers (Tr. 59).  She stated that her breathing problems stemmed from a tracheotomy performed after the 1981 car accident (Tr. 59).

### B.    Medical Evidence[1]

#### 1. Treating Sources

August, 1981, rehabilitative therapy discharge records by William F. Waring, M.D.

---

[1]Records created prior to Plaintiff's alleged onset of disability date of September 1, 2008 are included for background purposes only.

-4-

recount Plaintiff's July, 1981 automobile accident and subsequent treatment (Tr. 273-275). He noted that at the time of discharge, Plaintiff exhibited strength within a normal range but some weakness on the right side (Tr. 273). He stated that she was able to walk without assistance (Tr. 273). Dr. Waring noted that Plaintiff was independent in self care activities but exhibited "mild long term and short term memory problems (Tr. 274). He noted that Plaintiff did not experience respiratory distress after undergoing throat surgery (Tr. 274). He noted that at the time of discharge, left knee pain created "minor problems" (Tr. 274). Dr. Waring recommended followup for her physical conditions and "intensive psychological testing" on an outpatient basis (Tr. 275).

Treating notes from February, 2011 state that Plaintiff received a prescription for Elavil for insomnia (Tr. 323). Treating notes from April, 2011 state that Plaintiff reported "severe depression" (Tr. 322). The following month, she sought emergency treatment for depression, requesting Elavil (Tr. 312). She was prescribed Paxil (Tr. 312). Treating notes from the same month state that she was prescribed Neurontin for complaints of left-sided numbness (Tr. 322). In September, 2011, Plaintiff reported at a routine checkup that she had been "refused" when seeking psychological treatment for depression (Tr. 325). The same records indicate that she continued to take Neurontin (Tr. 325).

### 2. Non-Treating Sources

In June, 2010, Magaly Delgado, Psy.D. examined Plaintiff on behalf of the SSA, noting her report that she participated in limited special education classes following the 1981

-5-

accident until leaving school at the end of 12th grade (Tr. 278). Plaintiff reported that she lost her most recent job as a cashier after "'yelling at a customer'" (Tr. 278). She indicated that she held a job as a machine operator for 18 months before quitting the position to move to Florida (Tr. 278). She reported difficulty "reasoning, taking directions, and reading maps" (Tr. 278). Plaintiff indicated that she attempted to procure work each morning at a "temp" agency (Tr. 279).

Dr. Delgado observed that Plaintiff was able to count foward by "3s" and demonstrated a normal long-term memory (Tr. 279). Dr. Delgado placed Plaintiff in the "average range" of intelligence (Tr. 279). He found her social functioning "fair" based on her report of few friendships and found "mild" psychological impairment due to anxiety and depression (Tr. 280). He assigned her a GAF of 60[2] (Tr. 280).

The same month, Donald J. Tindall, M.D. performed a consultative physical examination on behalf of the SSA, noting Plaintiff's report of left upper and lower extremity weakness, low back pain, and left lower extremity numbness as a result of the 1981 accident (Tr. 282). Dr. Tindall noted that Plaintiff was fully oriented (Tr. 283). He observed that she had a mild limp, clear lungs, no difficulty "getting in and out of a chair," and full grip strength (Tr. 283). Plaintiff exhibited a full range of motion in all joints and a normal affect

---

[2]A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision,* 34 ("*DSM-IV-TR*" )(4th ed.2000).

(Tr. 283-284).   Dr. Tindall stated that he was "unsure as to the etiology" of the lower back pain, left thigh numbness, and "mild left leg muscle atrophy" (Tr. 284).

In August, 2010, John J. Wright Ph.D. performed a Psychiatric Review Technique, finding the presence of non-severe affective and substance abuse disorders (Tr. 288, 291, 296).   Under the "'B' Criteria," he found that Plaintiff's limitation in activities of daily living, social functioning, and maintaining concentration, persistence, and pace were "mild" (Tr. 298).

The following month, Minal Krishnamurthy, M.D. performed a non-examining Residual Functional Capacity Assessment, finding that Plaintiff could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for six hours in an eight-hour workday; and push and pull without limitation (Tr. 303).   She was limited to climbing, balancing, stooping, kneeling, crouching, and crawling on an occasional basis (Tr. 304).   Dr. Krishnamurthy found the absence of manipulative, visual, or communicative limitations but determined that she should avoid concentrated exposure to hazards such as machinery and heights (Tr. 306).

### C.  Vocational Expert Testimony

The ALJ posed the following question to VE Walter Todorowski, describing a hypothetical individual of Plaintiff's age, education and work experience:

> [A]ssume that the individual could perform light work.[3]  Could occasionally

---

[3]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or

climb, balance, stoop, kneel, crouch and crawl.  Should avoid concentrated exposure to hazards such as machinery and heights.  Could the individual perform any past relevant or other work? (Tr. 67).

The VE found that the above described individual could perform Plaintiff's past relevant work as a cashier (Tr. 67).  He testified further that if the individual were limited to sedentary work and further restricted to occasional climbing, balancing, stooping, kneeling, crouching, crawling, and the need to avoid concentrated exposure to hazards such as machinery and heights, she could perform the work of cashier (food checker) (3,439, 380 jobs in the national economy) and cashier (check cashier) (3,439,380) (Tr. 67).  He stated that the additional need for a sit/stand option would not change his findings (Tr. 67).

### D.    The ALJ's Decision

Citing the medical transcript, ALJ Jones found that Plaintiff experienced the severe impairments of left leg numbness, traumatic brain injury, and back pain, but that none of the conditions met or equaled any impairment listed in 20 CRF Part 404, Subpart P, Appendix 1 (Tr. 21, 23).  She found that Plaintiff experienced only mild limitation in activities of daily living, social functioning, and concentration, persistence, or pace (Tr. 22).  The ALJ found that Plaintiff  retained the  residual functional capacity ("RFC") for light work with the following additional restrictions:

---

carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy*  work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

> [S]he could occasionally lift or carry 20 pounds and frequently lift or carry 10 pounds. She could sit, stand, or walk for six hours in an eight-hour workday and could occasionally climb, balance, stoop, kneel, crouch, and crawl. The claimant should avoid concentrated exposure to hazards, including machinery and height (Tr. 23).

The ALJ found that Plaintiff could perform her past relevant work "as actually and generally performed" in the national economy (Tr. 26).

The ALJ discounted Plaintiff's allegations of physical limitation, citing Dr. Tindall's June, 2010 observations of full muscle strength and grip, good gross and fine manipulative abilities, and a slight limp (Tr. 24). The ALJ noted that Plaintiff's professed cognitive limitations were undermined by Dr. Delgado's findings of adequate intellectual functioning and a wide range of activities (Tr. 25, 278-280). Citing the recent treating records, the ALJ noted that Plaintiff had "no complaints" after being prescribed Neurontin for left leg numbness (Tr. 24). The ALJ observed that while attempting to procure benefits, Plaintiff continued to seek exertionally light employment (Tr. 21).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,*

305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at

step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### The ALJ Did Not Err in Relying on the Non-Treating Medical Sources

Plaintiff faults the ALJ for failing to discuss August, 1981 treating records created the month after the car accident. *Plaintiff's Brief* at 13-14, *Docket #12.* On a related note, she argues that the ALJ erred by relying on the 2010 consultative and non-examining source findings instead of the 2011 treating records. *Id.* at 13-15.

Plaintiff is correct that an opinion of limitation or disability by a treating source is entitled to deference. "[I]f the opinion of the claimant's treating physician is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir.2009)(internal quotation marks omitted) (citing *Wilson v. Commissioner of Social Sec.,* 378 F.3d 541, 544 (6th Cir.2004). Further, the failure to provide "good reasons" for rejecting a treating physician's opinion constitutes reversible error. *Gayheart v. Commisioner of Social Security*, 710 F.3d 365, 376 (6th Cir.2013) (citing *Wilson,* at 544–446). The deference accorded to a treating source opinion does not extend to one-time consultative sources or non-examining sources. *Kornecky v. Commissioner of Social Security,* 167 Fed.Appx. 496, 506, 2006 WL 305648, *9 (6th Cir. 2006)(citing

-11-

*Barker v. Shalala,* 40 F.3d 789, 794 (6th Cir.1994)).

Plaintiff's treating source argument is inapplicable here.  First, omission of discussion of treating records created the month after her accident do not provide grounds for remand. The August, 1981 records by Dr. Waring refer to Plaintiff's condition long before the September, 2008 alleged onset of disability date.  As noted by the ALJ, Plaintiff's earning records show that she was able to work for many years following the accident (Tr. 26). Notably, Plaintiff did not allege disability until 27 years after Dr. Waring's report was created.  *See Heston v. Commissioner of Social Sec.,* 245 F.3d 528, 536 (6th Cir. 2001)(ALJ's failure to consider a February, 1992 treating opinion "harmless error" given onset of disability date was November 17, 1992).  This Court is unaware of any case where the failure to mention records predating the alleged onset of disability date by over a quarter of a century mandates remand.  Notably, at the hearing, counsel acknowledged that the ALJ would not "go [as] far back" as 1981 medical records in determining whether Plaintiff was disabled as of September 2008 (Tr. 36).

To be sure, Plaintiff would argue that the older records are relevant because her current medical and psychological conditions stem from the 1981 accident.  However, the veracity of her claim that she sustained injuries in the accident are not in dispute.  Plaintiff offered testimony regarding limitations as a result of the 1981 accident (Tr. 39).  The ALJ adopted the findings of consultative sources Drs. Delgado and Tindall, both of whom found some degree of psychological and physical limitation stemming from the accident (Tr. 24-25,

-12-

278, 272).  As such, the ALJ's omission of direct reference to the August, 1981 records does not constitute grounds for remand.[4]

Likewise, Plaintiff's argument that the ALJ erred by adopting 2010 consultative and non-examining findings over 2011 treating findings is not well taken.  Plaintiff is correct that as a general rule, "updated" medical records are to be accorded more weight than older ones. *See Hamblin v. Apfel*, 2001 WL 345798, *2 (6th Cir. March 26, 2001)(affirming an ALJ's rejection of a treating physician's "outdated" opinion on the basis that a consultive physician had performed a more recent appraisal with contradicting findings).  The Sixth Circuit's holding favoring the use of updated medical information is even more applicable in a case where the newer evidence was created by a treating physician.  *See Sayles v. Barnhart,* 2004 WL 3008739, *23 (N.D.Ill. December 27, 2004)(adoption of "outdated and inadequate" non-treating findings created prior to a diagnosis of diabetes grounds for remand).

However, Plaintiff's contention that newer treating records ought to have been given more weight than older, consultative findings or that the consultative examiners would have changed their findings if they had benefit of treating records, is unavailing. The newer 2011 treating records amount to five pages of remarks related mostly to conditions unrelated to the disability claim (Tr. 321-325).  None of the records establish or suggest greater limitations that those found in the earlier consultative examination findings adopted by the ALJ.  For

---

[4]

Plaintiff states erroneously that the ALJ did not discuss Dr. Delgado's consultative findings. *Plaintiff's Brief* at 13-14.  While the ALJ did not mention Dr. Delgado by name, she referred to his findings as "the mental status examination in Exhibit 3F" (Tr. 25).

example, while April, 2011 treating records show that Plaintiff reported depression (Tr. 323), Dr. Delgado had already factored Plaintiff's allegations of depression into his June, 2010 consultative findings (Tr. 279). The terse references to depression in the treating records do not suggest that the condition was disabling or even created work-related limitations. September, 2011 treating notes stating that Plaintiff continued to take Neurontin for complaints of left-sided numbness four months after the medication was first prescribed (Tr. 322, 325) suggests that she obtained good results.

Moreover, the administrative opinion contains an adequate summation of the slim 2011 records (Tr. 24). To the extent that Plaintiff nonetheless argues that the ALJ "erred" by adopting the consultative assessments instead of the treating records, I note that the treating records do not contain an opinion of disability or even a functional assessment of her psychological or physical limitations.

In closing, I note that my decision to uphold the ALJ's findings should not be read to trivialize Plaintiff's limitations as a result of the 1981 accident. Nonetheless, the ALJ's determination that she was capable of her past relevant work as a cashier is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level and should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

-14-

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: June 30, 2014

-15-

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was sent to parties of record on June 30, 2014, electronically and/or by U.S. mail.

<div style="margin-left:40%;">
<u>s/Carolyn M. Ciesla</u>
Case Manager to the
Honorable R. Steven Whalen
</div>